BREELAND v. RITTER.

1. CHARGE not on facts.
2. IBID.—The Judge in instructing the jury used language not strictly appropriate to a civil action, but hardly stronger than language of the complaint, but after his explanation no harmful result could follow.

Before BENET, J., Barnwell, fall term, 1901.    Affirmed.

Action by J. S. Breland against L. W. Ritter and J. C. Breland.    From judgment for defendants, plaintiff appeals.

*Messrs. Davis & Best,* for appellant, cite: *It is error to charge matters not raised by pleadings:* 29 S. C., 152. *Charge was on facts:* 31 S. C., 281.,

*Mr. Jno. R. Bellinger,* contra (oral argument).

March 28, 1903.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    This was an action for actual and punitive damages for alleged wilful and malicious seizure and appropriation by defendants of the crops of William Harris, upon which plaintiff had an agricultural lien for supplies, with intent to defraud plaintiff.    The jury rendered a verdict in favor of defendants, and from the judgment thereon plaintiff appeals upon exceptions to the charge of the presiding Judge to the jury.    As the charge to which exception is taken relates to the third paragraph of the complaint, that portion of the complaint is here stated as follows:

"III. That on or about the first day of September, A. D.

1900, and at divers times thereafter, the defendants herein wrongfully took into their possession the entire crops grown on said lands, and in direct collusion with each other carelessly, wilfully, maliciously and wantonly disposed of the same and appropriated the proceeds thereof to their own use and benefit, and that all the while said crops were being gathered and being so disposed of, the defendants had full knowledge of the existence of said lien, and that their conduct, in view of this fact, was for the sole and express purpose of defrauding the plaintiff herein of his claim on said crops by virtue of said lien."

We may as well state here the answer of defendants, which, in addition to a general denial, was as follows:

"2. They allege that at the times mentioned in the complaint, the defendant, J. C. Breland, was a magistrate in and for the county of Bamberg, and that on the 10th day of September, 1900, the defendant, L. W. Ritter, before him as such magistrate, swore out a warrant of attachment against the crops of the said William Harris, mentioned in said complaint, under which warrant the said crops were seized and sold by the constable of said J. C. Breland, as magistrate, to satisfy a lien thereon held by said L. W. Ritter for the rent of the lands upon which said crops were raised, and the proceeds thereof were applied to the costs and expenses of said proceedings, and the balance to the payment of the lien of said L. W. Ritter, but that the same was not paid in full; that there was at the same time pending before said J. C. Breland, as magistrate, a warrant of attachment against said crops, sworn out by the plaintiff herein, to enforce his lien mentioned in said complaint, and that upon all the facts before him the said J. C. Breland, as such magistrate, decided that the lien of the said L. W. Ritter for rent had priority over that of the plaintiff, and that the proceeds of said sale should be applied accordingly, and that from that decision no appeal was taken or further proceedings had, and the proceeds were applied as above stated. That these defendants had no other connection with said crops."

31—65

In the charge to the jury, the presiding Judge used the language, in describing the allegations of the complaint, of which appellant complains in these exceptions.

"First. Because his Honor erred in charging the jury: 'It would have been much more serious if he had charged that J. C. Breland was a magistrate, because such a charge would be good ground for a criminal prosecution for malfeasance in office and oppression, a very serious offense; but note that the plaintiff does not say that J. C. Breland is a magistrate, but so far as this shows, a private individual, and that one private individual, along with Ritter, another private individual, maliciously seized the crops on the land, sold the crops and kept the proceeds themselves, acting in collusion— that is to say, doing a wrong thing in concert; that is what is meant by collusion.' The error being: (a) That the presiding Judge injected into the case and impressed it upon the jury that the plaintiff was charging defendants with a criminal offense.   (b) And the fact that it appearing by the complaint that the defendants were not sued as officers, made a distinction in the offense charged.

"Second. Because his Honor erred in charging the jury: 'Up to that point, that would be a charge of stealing, so far as this complaint shows;' whereas, there is nothing in the complaint which charges the defendants with stealing, and his Honor erred in expressing his opinion in manner aforesaid.

"Third. Because his Honor erred in charging the jury as follows: 'I have no idea that the plaintiff did intend to charge these men with outright stealing, but that is effect of this third paragraph' (referring to the complaint) ; 'whereas, it is respectfully submitted that there was no such issue before the jury, and it is further submitted, that to inject it into the case greatly prejudiced the plaintiff, and was the sole cause of his losing the verdict.

"Fourth. Because his Honor erred in charging the jury: 'There is nothing to indicate that they were acting (meaning the defendants) under any claim whatsoever, but acting as

thieves, and taking the crop of another, that belonged to another man, selling it and keeping the money. I don't know how much more plainly a case of stealing could be set forth. Crop thieves could not be better described up to this point;' whereas, it is respectfully submitted that his Honor abandoned his charge on the true issues in the case and deliberately injected an issue which the pleading on the part of the plaintiff does not raise; it appearing by the complaint that the defendants are simply charged with a bald trespass, and no intimation is made that they were guilty of larceny.

"Fifth. It is respectfully submitted that the effect of the foregoing instructions is made manifest when the jury returned and stated to his Honor: 'We find we have a very complicated case; the jury wish to know whether we should decide in favor of the plaintiff, it would incriminate the others as having stolen.' The Court: 'It would hardly be proper for me as presiding Judge to intimate what would be the meaning of your verdict, because the verdict is supposed to reflect the testimony, to be the effect of the testimony, and a Judge is not allowed to intimate what would be the meaning or the effect of the testimony, but I can say this: that the allegation of the complaint, as I said to you before—I tried to make it plain to you—did not say anything at all of Ritter and Breland, the defendants, having made any claim or pretense of claim to the property in question; the complaint simply charging that they wrongfully seized the property, sold the crops in question, sold them, does not even say sold them under a pretended lien or claim of any kind, but sold them and appropriated the proceeds to their own use, with intent to defraud the plaintiff in this case, and that they were acting in collusion for that purpose; that is the main charge in the third paragraph of the complaint.' The error being: (a) In refusing to answer the question of the jury. (b) In telling the jury that their verdict would reflect the testimony, thereby plainly intimating to them, that if the plaintiff had proven his complaint, the logical sequence would be that he had proven a case of stealing against the defendants.

"Sixth. That the whole context of his Honor's charge on the question above complained of was in violation of the Constitution, prohibiting Judges from charging on the facts or stating the testimony."

With reference to the sixth exception, we have carefully examined the charge, and do not find that it violates the constitutional inhibition against charging in respect to matters of fact.

With reference to the remaining exceptions, we have considered the same, and have concluded that they do not present matters which justify a reversal of the judgment in this case. The charge was very full and clear upon the law bearing on the issues raised by the pleadings. The language used in referring to the allegation of the complaint was not strictly appropriate for a civil proceeding, but the language of the Judge in describing the complaint was hardly stronger than the language of the complaint in alleging the wrongs committed by defendant. It is true, that these words of the Judge seem to have impressed the jury and perhaps caused them to return to the Court room and make the inquiry referred to in the fifth exception; but after the explanation made by the Court in answer to this inquiry, we do not think any harmful result could have followed. We quote all that was said in connection with this incident:

"The jury returned to the Court room, and the foreman stated, 'We find we have a very complicated case. The jury wish to know whether, should we decide in favor of the plaintiff, it would incriminate the others, as having stolen.' 'The Court: Gentlemen, it would hardly be proper for me as presiding Judge to intimate what would be the meaning of your verdict, because the verdict is supposed to reflect the testimony, to be the effect of the testimony, and a Judge is not allowed to intimate what would be the meaning or effect of the testimony; but I can say this: That the allegations of the complaint, as I said to you before, I tried to make it plain to you, did not say anything at all of Ritter or Breland, the de-

fendants, having made any claim or pretense of claim to the property in question; the complaint simply charging that they wrongfully seized the property, the crops in question, sold them; does not even say sold them under a pretended lien or claim of any kind, but sold them and appropriated the proceeds to their own use, with intent to defraud the plaintiff in this case, and that they were acting in collusion for that purpose; that is the main charge in the third paragraph of the complaint, as I said to you in my charge. Stealing consists in stealing, taking and carrying away; that means that you wrongfully seize the property of another, that you take it, carry it away, take it for your own use— that is the definition of larceny. Of course, this complaint does not in terms charge larceny, but charges the wrongful seizing and taking and carrying away and appropriating to their own use the proceeds of the sale, with intent to defraud the plaintiff—in other words, with intent to deprive him of his interest in the matter. If there had been no answer, no second defense in the answer, that would have looked altogether like a charge of stealing; but the answer throws light upon the alleged transaction, and if the testimony shows that the allegations of the answer are true, that Breland was a magistrate, that Ritter was the landlord, the owner of the land in question, then if they seized the crops, or either of them seized the crops in question, under the belief that they were seizing them according to law, and if they sold them under a supposed legal power to sell, under a lien—for example, a lien for rent—and if they distributed the proceeds as they believed in accordance with law, a certain amount going for costs and the rest to the landlord, then even though the seizure may have been illegal, though they may have made a mistake in doing what they did, if it was a mistake on the part of the magistrate and landlord, you cannot find punitive damages against them in this case, because they are charged with malicious motives; that what they did was done wilfully, and with deliberate intention to injure Sam Breland.

"Mr. Davis: Would your Honor permit me to call your attention to one fact: that in defining larceny, your Honor said the taking and carrying away with intent to deprive, would your Honor not call the jury's attention to the fact that in order to be larceny it must be done with a felonious intent.

"The Court: Yes, that is a definition. With felonious intent means to take, carry away and keep what does not belong to you. I say that the seizure must be an unlawful seizure, and with intent to take what does not belong to him, an intent to keep what does not belong to him. I do not, of course, charge, Mr. Foreman and gentlemen, that the complaint charges in words larceny at all, nor do I suppose it was the intention of the plaintiff in this case to charge that the defendants were thieves in the matter, but there is no intimation in the complaint that they were seizing the property under any pretense of a right. The answer does allege that in seizing the property they were acting as landlord and as magistrate. Now, you are to say whether the evidence satisfies you that they were acting as landlord in enforcing a landlord's lien, and as magistrate giving the aid of the law to enforce the lien, or were they acting only, pretending to act, as magistrate and landlord, under the pretense of using the means of law for the purpose of defrauding the other side.

"Juror: It seems to my mind clear about the punitive damages, what about the actual damage? The Court: If you come to the conclusion that these defendants, without any authority of law, or without any intention to carry out the law, wrongfully, not as landlord and magistrate, but wrongfully and without any pretense of carrying out the law, or color or claim, seized the property, but without any malicious intent, that would be a foundation for actual damages, if they damaged him at all. Is that plain enough? Juror: Yes. The Court: If, in other words, acting as magistrate and acting as landlord, they committed mistakes in law, but without any intention to injure the defendant, and believing that they

were acting within the law, and if under that belief a trial was had and a judgment rendered, then, even if that judgment was erroneous, no suit for damages would lie, because of the error of law of a Court below.    Appeal is the remedy. But if they made use of the process of the law, not to render a judgment in favor of the defendant, Ritter, but just to use the process of law to get ahead of Scott Breland, and did get ahead of him, not maliciously, but wrongfully, then you might find actual damages, but not punitive damages.

"Juror: If the jury felt that all parties were conscientious in the matter, would the jury, if they saw fit, have a right to divide the losses and gains?   The Court: I cannot say what the jury would have a right to do.   All I can say is they must endeavor to find a verdict in accordance with the evidence."

This shows that the attention of the jury was directed to the real issues in the case.

The judgment of the Circuit Court is affirmed.